WO

SC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| David M. Trevino, | No.   CV-24-03712-PHX-SHD (CDB) |
| Plaintiff, | |
| v. | **ORDER** |
| NaphCare Incorporated, et al., | |
| Defendants. | |

Plaintiff David M. Trevino, who is confined in the Arizona State Prison Complex-Eyman, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and subsequently paid the filing and administrative fees. The Court dismissed the Complaint for failure to state a claim with leave to amend. Plaintiff filed a motion for extension of time (Doc. 9)[1] and then filed a First Amended Complaint (Doc. 10). The Court will grant the motion and will deem the First Amended Complaint timely filed. The Court will order Defendants NaphCare and Karanja-Adams to respond to Counts I and II. With respect to Count III, the Court will grant Plaintiff 120 days to discover the identify of Defendant Unknown Physician and file a notice of substiution.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

TERMPSREF

U.S.C. § 1915A(a). The Court must dismiss a complaint, or portion thereof, if a plaintiff raises claims that are legally frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe [self-represented litigant's] filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a self-represented prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**II.   First Amended Complaint**

In his three-count First Amended Complaint, Plaintiff alleges claims for denial of constitutionally adequate medical care. Plaintiff sues Defendants NaphCare Incorporated ("NaphCare"), Nurse Practitioner Grace Karanja-Adams, and an Unknown Physician,

seeking declaratory, injunctive, compensatory, and punitive relief.

In **Count I**, Plaintiff alleges the following facts:

On May 26, 2023, Plaintiff was suffering from "really bad chest pain," and a correctional officer initiated the Incident Command System (ICS).[2] Plaintiff was transported to the medical unit, where non-party Nurse Hernandez performed an EKG. Plaintiff reported that he also had ongoing shoulder pain. When the EKG "came back normal," Plaintiff was sent back to his unit. (Doc. 10 at 3.)

Plaintiff submitted Health Needs Requests (HNRs) about symptoms including severe abdominal and chest pain, vomiting, difficulty keeping food and water down, burning on his side on a 10 out of 10 scale, excessive sweating, clamminess, and difficulty sleeping, urinating, and performing everyday tasks. On July 13, 2023, Defendant Karanja-Adams ordered a scan of Plaintiff's shoulder, which was performed by outside provider Simon Med, but that also captured Plaintiff's abdomen. According to Plaintiff, the Simon Med report "clearly show[ed] a major medical issue" with Plaintiff's gall bladder. (*Id.* at 4.) The Simon Med report stated in part, "[d]iffusely inflamed gall bladder containing gallstones with suggestion of focal perforation in the gallbladder fossa," and reported an impression that, "diffusely inflamed gallbladder containing gallstones with suggestion of focal contained perforation in the gallbladder fossa. Etiology of pain likely due to this phenomenon. CT abdomen with IV contrast likely recommended for further evaluation[.]"[3] (*Id.* at 4-5.)

The report further stated:

---

[2] An ICS is an Arizona Department of Corrections, Rehabilitation & Reentry process "to prepare for, prevent, respond to, recover from, and mitigate incidents and emergencies." *See* Department Order (DO) 706 at 1 [https://perma.cc/B8LH-UEJT].

[3] According to the Mayo Clinic, gallstones are hardened deposits of digestive fluid that form in the gall bladder. *See* https://www.mayoclinic.org/diseases-conditions/gallstones/symptoms-causes/syc-20354214 [https://perma.cc/Q9B7-AHNT]. Gallstones may cause no signs or symptoms, but if a gallstone lodges in a duct and causes a blockage, resulting signs and symptoms may include sudden and rapidly intensifying pain in the upper right abdomen or the center abdomen just below the breastbone, back pain between the shoulder blades, pain in the right shoulder, and nausea or vomiting. *Id.* Risk factors include being overweight, sedentary, eating a high fat or high cholesterol diet, and eating a low fiber diet, among others. *Id.*

> Critical results pathway was initiated secondary to positive findings noted above. This examination has been assigned to the Simon Med support staff for communication to the ordering physician or their representative. In addition, the report will be immediately transmitted via the electronic medical record or by fax at the time of dictation. If you require further assistance, please contact our Radiologist Hotline.

(*Id.* 4-5 and 6.) Despite the report, prison medical staff, namely Defendant Karanja-Adams, who ordered the scan, took no action in response to the report.

On August 1, 2023, Plaintiff began to again experience severe abdominal pain, vomiting, inability to keep food and liquids down, burning in his side at a level of 10 out of 10, excessive sweating, clamminess, and difficulty sleeping, urinating, and performing everyday tasks. After several "man downs," the ICS was initiated for a medical emergency. (*Id.* at 6.) At the medical unit, a nurse gave Plaintiff Milk of Magnesia, an injection for nausea, and told Plaintiff that he was fine. Plaintiff showed the nurse his Simon Med report and said something was wrong. The nurse took no further steps, but told Plaintiff to watch what he was eating, then took his blood pressure, again told him he was fine, and sent him back to his unit.

On August 2, 2023, a correctional officer activated the ICS for another "man-down" medical emergency due to Plaintiff again experiencing the same symptoms as the day before. The same nurse who had seen Plaintiff the day before said that Plaintiff was "faking" it. (*Id.* at 8.) Non-party Provider Johnson asked Plaintiff what was wrong with his shoulder and knee, and Plaintiff responded that there was something wrong with his stomach too. Johnson stated that she already knew, and they were getting Plaintiff "out of here." (*Id.*) Johnson told the nurse to get on the phone and get Plaintiff to the hospital; Plaintiff was taken to the hospital. At the hospital, a surgeon told Plaintiff that his gall bladder would be removed. Post-surgery, after Plaintiff regained consciousness, a nurse told him that there had been some complications, and a different surgeon, Dr. Sudwal, told Plaintiff that he could have died if another day had passed before he came to the hospital, and that Plaintiff should have been treated long before. She told Plaintiff that she was able to save his colon, that his gallbladder had a large opening in it and had fused with his colon,

that his colon had been leaking into his gall bladder and his body, and that his gall bladder had been leaking into his colon. The surgeon told Plaintiff that he had been "literally dying," and she had never seen anything like it in ten years of practice. (*Id.* at 10.) Plaintiff was hospitalized for six days before returning to prison.

There, Plaintiff was assigned to a top bunk despite instructions that he was not to engage in strenuous physical activities for four weeks after surgery. Plaintiff had "much difficulty climbing up [to] the top bunk," and a surgical staple popped out. (*Id.* at 11.) After several days, Plaintiff was reassigned to a bottom bunk. Plaintiff suffered and continues to suffer from pain and "extreme difficulty urinating." (*Id.*)

Plaintiff contends that Defendant NaphCare maintains a policy that overrides or delays implementing provider or specialist recommendations and encourages a practice of medical staff not scheduling medically necessary appointments and treatment due to cost and/or complexity. Plaintiff contends that NaphCare, via its medical staff, received Plaintiff's radiology report on July 13, 2023, which reflected a serious and life-threatening medical need but failed to act on the report. Plaintiff claims that even a layperson reading the Simon Med report would have recognized that he had a major medical issue and would have immediately performed further evaluation or sent Plaintiff to the hospital, but prison medical staff failed to do either.

In **Count II**, Plaintiff largely repeats the allegations in Count I, but also alleges the following:

Defendant Karanja-Adams acted with deliberate indifference to his serious medical needs by failing to act in response to the Simon Med report, which reflected a perforation of Plaintiff's gall bladder. Plaintiff suffered severe pain, and nearly died, because no action was taken for approximately 20 days after the report was transmitted to her. Both before and after the July 13, 2023 scan, Plaintiff suffered severe pain and related symptoms, but Karanja-Adams failed to act on his symptoms.

In **Count III**, Plaintiff incorporates the allegations in Counts I and II, but additionally alleges the following:

Defendant Unknown Physician directly supervised Defendant Karanja-Adams. Plaintiff claims that Defendant Unknown Physician is liable for failing to sufficiently supervise Defendant Karanja-Adams and was obligated to monitor Defendant Karanja-Adams. Plaintiff contends that both Defendants Unknown Physician and Karanja-Adams knew or should have known about the results of the July 13, 2023 scan and both failed to take adequate and necessary steps based upon the results. Only about twenty days later did Plaintiff receive appropriate medical care on an emergent basis after non-party Provider Johnson directed that Plaintiff be transferred to the hospital. Plaintiff claims that Defendant Unknown Physician acted with deliberate indifference to Plaintiff's serious needs by failing to adequately supervise the provision of care by Defendant Karanja-Adams.

### III.     Claims for Which an Answer Will be Required

Plaintiff alleges that he was denied constitutionally adequate medical care, which arises under the Eighth Amendment, and not the Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by prison doctors' response to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

### A. Defendants NaphCare and Karanja-Adams

Plaintiff sufficiently alleges facts to state a claim against NaphCare and Karanja-Adams. They will be required to respond to Counts I and II of the First Amended Complaint.

### B. Defendant Unknown Physician

Although Plaintiff has stated a claim against Defendant Unknown Physician in Count III, the Court will not require service on that individual at this time because it is, in most instances, impossible for the United States Marshal or his designee to serve a summons and complaint upon an anonymous defendant. However, the Court will not dismiss the claim against Defendant Unknown Physician at this time. The Court will allow Plaintiff 120 days in which to discover the actual name of Defendant Unknown Physician, through subpoena or otherwise, and to substitute that individual's actual name by filing a "notice of substitution." *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). The Court may dismiss Count III of this action without prejudice if Plaintiff fails to timely file a notice of substitution identifying Defendant Unknown Defendant, unless Plaintiff seeks and is granted an extension of time.

## IV. Warnings

### A. Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections, Rehabilitation & Reentry Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court. Plaintiff is not required serve Defendants with copies of every document or provide an additional copy of every document for the Court's use.

**If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these

warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's motion for extension of time to file his amended complaint (Doc. 9) is **granted** and the First Amended Complaint is deemed timely filed.

(2) The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 10), this Order, and both summons and request for waiver forms for Defendants NaphCare and Karanja-Adams.

(3) Plaintiff must complete[4] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(4) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(5) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(6) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(7) A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not

---

[4] If a Defendant is an officer or employee of the Arizona Department of Corrections, Rehabilitation & Reentry, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections, Rehabilitation & Reentry unless the officer or employee works there.

the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(8) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) **and** Rule 4(h)(1) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9) Defendants NaphCare and Karanja-Adams must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(10) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(11) Plaintiff has **120 days** from the filing date of this Order in which to discover,

by subpoena or otherwise, the identity of Defendant Unknown Physician, *and* to file a "notice of substitution" for that Defendant.

(12) The Clerk of Court must issue one subpoena in blank and one copy of the Marshal's Process Receipt & Return form (USM-285) to Plaintiff.

(13) Plaintiff shall complete the subpoena and USM-285 form and promptly return them to the Clerk of Court.

(14) Upon receipt of properly completed subpoena and USM-285 form, the Clerk of Court must deliver the subpoena, the USM-285 form, and a copy of this Order, to the United States Marshal for service.

(15) Within **20 days** of receiving the subpoena, USM-285 form, and a copy of this Order, the United States Marshal must personally serve the subpoena and a copy of this Order in accordance with the provisions of Rule 45 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 566(c) and 1915(d).

(16) Within **10 days** after personal service is effected, the United States Marshal must file a proof of service.

(17) The Clerk of Court may dismiss Count III of the First Amended Complaint for failure to prosecute without prejudice and without further notice to Plaintiff, if Plaintiff fails to file a notice of substitution within 120 days for Defendant Unknown Physician, unless Plaintiff seeks and is granted an extension of time.

(18) This matter is referred to Magistrate Judge Camille D. Bibles pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 1st day of October, 2025.

Honorable Sharad H. Desai
United States District Judge